**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

NEMA SALMON, *a/k/a Nemar Salmon*,

                    Plaintiff,

      - v -                                                Civ. No. 9:14-CV-0827
                                                                  (LEK/DJS)

OFFICER BELLINGER,

                    Defendant.

| APPEARANCES: | OF COUNSEL: |
|---|---|
| NEMA SALMON<br>Plaintiff, *Pro Se*<br>11-R-2364<br>Marcy Correctional Facility<br>P.O Box 3600<br>Marcy, New York 13403 | |
| HON. ERIC T. SCHNEIDERMAN<br>Attorney General of the State of New York<br>Attorney for Defendant<br>The Capitol<br>Albany, New York 12224 | JOSHUA L. FARRELL, ESQ.<br>Assistant Attorney General |

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Nema Salmon commenced this action, pursuant to 42 U.S.C. § 1983, alleging that Defendant Correctional Officer Donald Bellinger used excessive force against him at Riverview Correctional Facility ("Riverview C.F."). Dkt. No. 1, Compl. Presently before the Court is Defendant's Motion for Summary Judgment based on the ground that Plaintiff failed to exhaust his administrative remedies prior to filing this action. Dkt. No. 23, Def.'s Mot. for Summ. J. Plaintiff did not file a response. For the reasons that follow, the Court recommends that Defendant's Motion

be **granted**.

## I. BACKGROUND

Plaintiff alleges the following facts in his Complaint. On January 17, 2014, Plaintiff was being taken to the special housing unit ("SHU") at Riverview C.F. Compl. at 1. Upon arriving at SHU, Defendant Bellinger and an unidentified officer conducted a strip search of Plaintiff. *Id.* at pp. 1-2. During the search, a bag of tobacco fell out of Plaintiff's clothes. *Id.* at p. 2. Plaintiff alleges that the officers then used excessive force against him. *Id.* Following the incident, Bellinger warned Plaintiff "to not make [his] voice be heard or else [he would] get the beating of a life time." *Id.*

Ten days after this incident, on June 27, 2014, Plaintiff was transferred to Gouverneur Correctional Facility ("Gouverneur C.F."). Dkt. No. 23-10, Def.'s Statement of Material Facts ("Def.'s SMF"). Plaintiff commenced this action on July 8, 2014. *See* Compl.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the

facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When a motion for summary judgment is unopposed, the court may "grant summary

judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." FED. R. CIV. P. 56(e)(3); *see also* N.D.N.Y.L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers . . . shall be deemed as consent to the granting or denial of the motion."). "If the evidence adduced in support of the summary judgment motion does not meet [the movant's] burden [of production], 'summary judgment must be denied *even if no opposing evidentiary matter is presented*.'" *Amaker v. Foley*, 247 F.3d 677, 681 (2d Cir. 2001) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970)). "An unopposed summary judgment motion may also fail where the undisputed facts fail to 'show that the moving party is entitled to judgment as a matter of law.'" *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (quoting *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996)).

## B. Exhaustion

Defendant argues that this action must be dismissed because Plaintiff failed to exhaust his administrative remedies. Dkt. No. 23-11, Def.'s Mem. of Law.

### *1. Exhaustion Procedure*

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id*. at 524; *Ross v. Blake*, __ S. Ct. __, 2016 WL 3128839, at *5 (2016) (stating that mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).[1]

In New York, the administrative remedies consist of a three-step Inmate Grievance Program ("IGP"). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). The IGRC reviews and investigates the formal complaints and then issues a written determination. *Id*. Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id*. at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Cental Office Review Committee ("CORC") makes the final administrative determination. *Id*. at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v .Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

---

[1] Exhaustion of administrative remedies is an affirmative defense which must be raised by the defendant. *See Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999). Defendant properly raised the defense in his Answer. Dkt. No. 18, Answer at ¶ 11.

In addition to the formal grievance procedure described above, the regulations provide for an expedited grievance procedure for claims of employee "harassment." N.Y. COMP. CODES R. & REGS. tit. 7, § 701.8. Pursuant to this expedited procedure, the inmate may first report the incident to the employee's immediate supervisor. *Id.* at § 701.8(a). The inmate's allegations are then given a grievance number and the superintendent (or his designee) must promptly decide whether the grievance, if true, would represent a bona fide case of harassment. *Id.* at §§ 701.8(b) & (c).

If the superintendent determines that the allegations do not represent a bona fide case of harassment, the allegations are automatically routed to the IGRC for resolution according to the formal three-step grievance procedure outlined above. *Id.* at § 701.8(c). If the superintendent finds that the allegations do represent a bona fide case of harassment, then he must either initiate an in-facility investigation by higher ranking personnel, or request an investigation by the Inspector General's Office, and if criminal activity is involved, the superintendent may request an investigation by the New York State Police Bureau of Criminal Investigations. *Id.* at §§ 701.8(d); *see also Perez v. Blot*, 195 F. Supp. 2d 539, 542-43 (S.D.N.Y. 2002) (describing the grievance system).

The superintendent must render a decision within twenty-five calendar days of receipt of the grievance. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.8(f). If the superintendent fails to respond within this required time-frame, the inmate may appeal his grievance to CORC by filing a notice of decision to appeal with the inmate grievance clerk. *Id.* at § 701.8(g). If the inmate receives a response from the superintendent and wishes to appeal to CORC, he must file a notice of decision to appeal with the inmate grievance clerk within seven calendar days of receipt of the response. *Id.* at § 701.8(h).

In sum, the expedited procedure set forth above allows inmates to bypass filing a formal grievance by instead "reporting" the incident. *See Perez v. Blot*, 195 F. Supp. 2d at 544. Such a process is wholly consistent with the underlying concern of employee harassment.

### 2. *Plaintiff's Failure to Exhaust Administrative Remedies*

In this case, it is undisputed that Plaintiff did not file any grievance relative to the incident alleged in his Complaint and therefore did not exhaust his administrative remedies. There is no record on file at either Riverview C.F. or Gouverneur C.F. of a grievance filed by Plaintiff regarding the June 17, 2014 excessive force incident. Dkt. No. 23-2, Decl. of Kristina Monnet, dated Sept. 29, 2015, at ¶ 5; Dkt. No. 23-3, Decl. of Laura Looker, dated Oct. 1, 2015, at ¶ 6. Plaintiff's only grievance filed at either of these facilities concerned a deduction from his inmate account for lost sneakers. Looker Decl., Ex. A. There is also no record of Plaintiff having appealed a grievance regarding this incident to CORC. Dkt. No. 23-1, Decl. of Jeffery Hale, dated Sept. 28, 2015, at ¶¶ 15-17.

Moreover, Plaintiff admitted at his deposition that he did not file a grievance regarding this incident. Dkt. No. 23-6, Joshua Farrell Decl., Ex. A, Pl.'s Dep., dated July 15, 2105, at pp. 47-49. Instead, Plaintiff sent letters to Anthony Annucci, Acting Commissioner of the Department of Corrections and Community Supervision ("DOCCS"), and the Inspector General of DOCCS. Dkt. No. 23-7, Farrell Decl., Ex. E; Dkt. No. 23-8, Farrell Decl., Ex. F. These letters requested that criminal charges be filed against the correctional officers and that the letter not be treated "as a grievance complaint" because Plaintiff felt his life was in danger. Farrell Decl., Exs. E & F. Plaintiff stated that he knew there were grievance procedures in place, but did not want to access it because he did not want his complaint investigated by officers at the facility. *See* Pl.'s Dep. at pp.

47-49. Letters sent outside of the grievance process, such as Plaintiff's letters to Commissioner Annucci and the Inspector General, are insufficient to satisfy the exhaustion requirement. *See Timmons v. Schriro*, 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015) ("[T]he law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA."); *Muhammad v. Pico*, 2003 WL 21792158, at *8 (S.D.N.Y. Aug. 5, 2003) ("District court decisions in this circuit have repeatedly held that complaint letters to the DOCS Commissioner or the facility Superintendent do not satisfy the PLRA's exhaustion requirements."); *Grey v. Sparhawk*, 2000 WL 815916, at *2 (S.D.N.Y. June 23, 2000) ("Any complaint . . . made directly to the Inspector General's office does not serve to excuse plaintiff from adhering to the available administrative procedures."). Plaintiff's letters therefore neither satisfy the IGP, nor the expedited alternative for allegations of harassment.

*3. Whether Plaintiff's Failure to Exhaust Administrative Remedies may be Excused*

Plaintiff's obligation to exhaust administrative remedies may be nonetheless be excused if remedies were unavailable. *Ross v. Blake*, __ S. Ct. __, 2016 WL 3128839, at *7 (2016). As the Supreme Court recently stated, "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Court stated three potential circumstances where administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a

grievance process through machination, misrepresentation, or intimidation." *Id.* at *7-8.[2]

Plaintiff admits that the grievance process was available to him. Pl.'s Dep. at p. 47. However, Plaintiff claims that he did not file a grievance because he feared retaliation based on threats that Defendant Bellinger had made. *Id.* at pp. 51 & 55. Under *Ross*, threats or other intimidation by prison employees may render administrative remedies unavailable. 2016 WL 3128839, at *8 n.3. The Second Circuit has stated that "[t]he test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available." *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004).

Plaintiff's claim that Bellinger made a specific threat to retaliate against him if he filed a grievance regarding the assault, Pl.'s Dep. at pp. 43, 51, & 55, would be sufficient to create an issue of material fact as to whether administrative remedies were available to Plaintiff at Riverview C.F. Specific threats of retaliation could reasonably deter a prisoner in Plaintiff's situation from filing a grievance, particularly when the threats followed an assault. *See, e.g.*, *Hemphill v. New York*, 380 F.3d at 688 (remanding for determination of availability of administrative remedies where officer threatened to retaliate against the plaintiff if he filed a complaint); *Lunney v. Brureton*, 2007 WL 1544629, at *9 (S.D.N.Y. May, 29, 2007) (finding that "a reasonable factfinder could conclude that a prisoner in [the plaintiff's] situation would be deterred from complaining about an assault that had

---

[2] The Second Circuit has previously identified three circumstances when a failure to exhaust may be excused: "(1) administrative remedies are not available to the prisoner; (2) defendants have either wived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)). The Supreme Court in *Ross* explicitly rejected the "special circumstances" exception, and focused the inquiry on the "availability" of administrative remedies. *Ross v. Blake*, __ S. Ct. __, 2016 WL 3128839, at *7. The Court therefore will focus its analysis on the availability of administrative remedies to Plaintiff. The Court will also discuss estoppel, although it is unclear whether the doctrine survives *Ross*.

just occurred); *Hepworth v. Suffolk Cty.*, 2006 WL 2844408, at *6 (E.D.N.Y. Sept. 29, 2006) (finding that officers' threats of violence if the plaintiff reported assault may have deterred person of ordinary firmness from using grievance process). Defendant's argument that Plaintiff's claims are contradicted by the fact that he sent complaint letters to the DOCCS Commissioner and Inspector General is misplaced. Dkt. No. 23-11, Defs.' Mem. of Law at p. 8. In *Hemphill*, the Second Circuit stated "that threats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system, or to external structures of authority such as state or federal courts." 380 F.3d at 688.

However, Plaintiff has not shown that administrative remedies were unavailable at Gouverneur C.F. Plaintiff was transferred to Gouverneur C.F. on June 27, 2014, ten days after the alleged assault. Monnett Decl. at ¶ 4. An inmate must submit a grievance "within 21 calendar days of the alleged occurrence." N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a). Additionally, an inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* § 701.6(g). Plaintiff therefore had eleven days to file his grievance and thirty-five days to request an extension after his transfer to Gouverneur C.F. Plaintiff states that he did not file a grievance at Gouverneur C.F. because he believed that officers there might be in contact with officers at Riverview C.F. and would retaliate against him. Pl.'s Dep. at p. 51. This amounts to nothing more than a "generalized fear of retaliation," which is insufficient to excuse a failure to exhaust. *See Brown v. Napoli*, 687 F. Supp. 2d 295, 297 (W.D.N.Y. 2009); *Harrison v. Stallone*, 2007 WL 2789473, at *5-6 (N.D.N.Y. Sept. 24, 2007). Therefore, the Court finds that Plaintiff has not identified any issue of fact as to the availability of administrative remedies at Gouverneur C.F.

*See Wallace v. Fisher*, 2015 WL 9275001, at *4 (N.D.N.Y. Dec. 18, 2015) (finding that even if administrative remedies were unavailable to the plaintiff at first correctional facility, there was no issue of material fact that they were available following his transfer to a second correctional facility); *Newman v. Duncan*, 2007 WL 2847304, at *4 (N.D.N.Y. Sept. 26, 2007) (finding that administrative remedies were available to inmate where he was transferred out of facility where officer had threatened him).

The Second Circuit has also held that "the affirmative defense of exhaustion is subject to estoppel." *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004). The Second Circuit has questioned whether the doctrine of estoppel survived the Supreme Court's decision in *Woodford v. Ngo*, 548 U.S. 81 (2006), which held that the PLRA requires "proper exhaustion." *Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011) ("We have questioned whether, in light of *Woodford*, the doctrines of estoppel and special circumstances survived."); *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006). The Supreme Court's decision in *Ross* again puts the availability of estoppel in doubt. 2016 WL 3128839, at *5-6. In *Ross*, the Supreme Court made clear that the mandatory nature of the exhaustion required by the PLRA forecloses judicial discretion to craft exceptions. *Id.* at *5; *see also id.* at *6 ("Exhaustion is no longer left to the discretion of the district court." (quoting *Woodford v. Ngo*, 548 U.S. at 85)). Nonetheless, in an abundance of caution, because the Second Circuit has not yet addressed the impact of *Ross* on the inquiry stated in *Hemphill*, the Court will discuss whether Defendant Bellinger would be estopped from asserting the exhaustion defense.

A defendant who "inhibit[s] an inmate's ability to utilize grievance procedures" may be estopped from raising exhaustion as an affirmative defense. *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004). A prisoner must demonstrate that the "defendants took affirmative action to prevent

him from availing himself of grievance procedures." *Amador v. Andrews*, 655 F.3d at 103. "[V]erbal and physical threats of retaliation, physical assault, denial of grievance forms or writing implements, and transfers constitute such affirmative action." *Id.* "Estoppel is found where 'an inmate reasonably understands that pursuing a grievance through the administrative process will be futile or impossible.'" *Kasiem v. Switz*, 756 F. Supp. 2d 570, 577 (S.D.N.Y. 2010) (quoting *Winston v. Woodward*, 2008 WL 2263191, at *9 (S.D.N.Y. May 30, 2008)).

In this case, for the same reasons that the Court found that administrative remedies were available to Plaintiff at Gouverneur C.F., the Court finds that Defendant Bellinger did not inhibit Plaintiff's ability to exhaust administrative remedies at Gouverneur C.F. There is no evidence in the record that suggests that Plaintiff reasonably feared retaliation by Bellinger at Gouverneur C.F. or that administrative remedies were otherwise unavailable to him there. *See Contino v. City of New York*, 2013 WL 4015816, at *6 (S.D.N.Y. Aug. 7, 2013) ("An inmate's fear that disciplinary actions will be taken against him if he proceeds with a grievance process must, at a minimum, be reasonable in order to relieve the plaintiff of his obligation to exhaust."); *Goodson v. Silver*, 2012 WL 449937, at *8 (N.D.N.Y. Sept. 25, 2012) ("[E]ven if the Court were to find that Plaintiff was effectively prevented by Defendants from filing a grievance while he was at Clinton C.F., the Court would find that he was not prevented by Defendants (or anyone) from filing that grievance . . . once he was transferred from Clinton C.F."); *Mateo v. O'Connor*, 2010 WL 3199690, at *5 (S.D.N.Y. Aug. 12, 2010) ("[I]n this case, the threats were of no consequence. By his own admission, [the plaintiff] was not prevented from following the prison's internal grievance procedure."). Thus, Defendant Bellinger is not estopped from raising exhaustion as an affirmative defense.

Accordingly, the Court recommends that Defendant's Motion for Summary Judgment be

**granted** on account of Plaintiff's failure to exhaust his administrative remedies.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendant's Motion for Summary Judgment (Dkt. No. 23) be **GRANTED** and this action be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: July 5, 2016
       Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge